MARLO M., by her guardians and next friends William and Carlette PARRIS, and Durwood W. by his guardian nex next friend Willie Williams, Plaintiffs,

v.

Lanier CANSLER, in his official capacity as Secretary of the Department of Health and Human Services, and Karen Salecki, in her official capacity as Area Director of the Beacon Center Local Management Entity, Defendants.

No. 5:09–CV–535–BO.

United States District Court, E.D. North Carolina, Western Division.

Jan. 17, 2010.

**636**

Jennifer Leah Bills, John R. Rittelmeyer, Disability Rights of North Carolina, Raleigh, NC, for Plaintiffs.

Lisa G. Corbett, N.C. Dept. of Justice, Christopher P. Brewer, Wilson Hayman, Poyner Spruill LLP, Raleigh, NC, for Defendants.

David W. Knight, United States Department of Justice, Washington, DC, for Amicus, United States of America.

### ORDER

TERRENCE William BOYLE, District Judge.

This matter is before the court with respect to Plaintiffs' Motion for Preliminary Injunction [DE # 4]. Plaintiffs asked the court to enjoin Defendants from reducing or terminating state funding to preserve Plaintiffs' care and placement in their homes pending resolution of the lawsuit. The parties fully briefed the issue. In addition, the court considered the amicus curiae brief filed by the United States in support of Plaintiffs' motion.[1] A hearing on the motion was held before the court on December 28, 2009. At the conclusion of the hearing, the court ruled from the bench that Plaintiffs' Motion for Preliminary Injunction [DE# 14] was GRANTED. In addition to the reasons stated from the bench, the court files this order in support of its ruling.

---

1. The court previously granted the United States' motion to participate as amicus curiae. *See* DE # 17.

## BACKGROUND

Plaintiffs are adults who suffer from a variety of developmental disabilities and mental illness that require twenty-four hour care and supervision a day. Defendant Karen Salacki is the Area Director of the Beacon Center, an entity which oversees the state funding used to provide services for Plaintiffs. Defendant Lanier Cansler is the Secretary of the Department of Health and Human Services, and is responsible for the management, oversight, and implementation of state funding used to provide services for Plaintiffs.

Through a combination of federal and state funding, Plaintiff Mario M. has been living in her own home for a period of more than four years, and Durwood W. has been living in his own home for a period of more than ten years. On or about November 30, 2009, Plaintiffs received notice the state funding they rely upon to remain in their homes would be terminated effective December 15, 2009, forcing them into group or institutional housing. On December 11, 2009, Plaintiffs filed the complaint in this action. The complaint alleges the termination of funding by Defendants that enables Plaintiffs to remain in their homes violates the Americans with Disabilities Act ("ADA"), Title II, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Also on December 11th, Plaintiffs filed their request for a temporary restraining order and preliminary injunction. On December 14, 2009, the court granted a temporary restraining order which remained in effect until the court granted Plaintiffs' request for the preliminary injunction at the conclusion of the hearing on December 28th. As noted above, the United States has been granted leave to participate in the action as amicus curiae and has filed in support of Plaintiffs.

## DISCUSSION

■ "A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren,* 553 U.S. 674, 128 S.Ct. 2207, 2219, 171 L.Ed.2d 1 (2008) (internal quotations omitted). A movant must establish four elements before a preliminary injunction may issue: 1) he is likely to succeed on the merits; 2) he is likely to suffer irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in his favor; and 4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.,* —— U.S. ——, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008). Prior to the decision in *Winter,* the Fourth Circuit applied a "hardship balancing test" for preliminary injunctions under which a movant was not required to show a likelihood of success, but only a possibility of success. Since the ruling in *Winter,* the Fourth Circuit has acknowledged the balance-of-hardship test no longer applies, and "the standard articulated in *Winter* governs the issuance of preliminary injunctions...." *The Real Truth About Obama, Inc. v. Federal Election Commission,* 575 F.3d 342, 347 (4th Cir.2009).

■ Applying the standard in *Winters,* the court finds Plaintiffs have established they are entitled to a preliminary injunction. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Discrimination prohibited under the ADA includes "unnecessary segregation" and "unjustified institutional isolation of personal disabilities." *Olmstead v. L.C.,* 527 U.S. 581, 600–02, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999). A State is required to provide community-based services for persons with disabilities deemed eligible

based on the reasonable assessments of the State's professionals. *Id.* at 602, 119 S.Ct. 2176. In accordance with the goals of the ADA and the Rehabilitation Act, the State shall provide services in the most integrated setting possible. *See e.g. Olmstead,* 527 U.S. at 591–92, 119 S.Ct. 2176. The State must make reasonable modifications to comply, but are exempted from this responsibility when it would require "fundamental alteration" of the States' services or programs. *Id.*

At this juncture, Plaintiffs present a strong case that their funding is being terminated by Defendants in violation of the ADA. There is no question Plaintiffs, who have been successfully living in their own homes for numerous years, are deemed eligible for community-based living by the State's experts. Termination of funding by Defendants will force Plaintiffs from their present living situations, in which they are well integrated into the community, into group homes or institutional settings. This decision to terminate funding does not appear to be supported by legal justification recognized under the ADA. The record does not indicate the State will have to make a fundamental alteration of the State's services to maintain Plaintiffs in the present community setting. Consequently, Plaintiffs have shown a reasonable likelihood of success on the merits.

■ Plaintiffs have also clearly demonstrated they will suffer irreparable harm. Plaintiffs, who have a variety of mental illnesses and developmental disabilities, have lived successfully in their community based apartments. In the absence of an injunction, both Plaintiffs will lose funding and be forced from these community settings. The evidence at this point is strong that Plaintiffs will suffer regressive consequences if moved, even temporarily. Plaintiffs have behavioral and special needs, and benefit from a stable environ-

ment and personalized treatment. Information in the record indicates they each have conditions or behaviors which make them poor candidates for group housing. With respect to Durwood W., the facts show he was placed in his present living situation after he failed in, and was discharged from, a group home because of his inability to conform his behavior. It appears that if forced from their present settings, both Plaintiffs face a substantial risk of institutionalization. In addition, Marlow M.'s apartment is uniquely suited to her physical needs, designed with low counter tops and other modifications to accommodate a person of short stature. Should she be removed during the pendency of the lawsuit and prevail, there is no indication the apartment or a similar one will be available for her.

■ In contrast, the harm to Defendants if an injunction is granted is at most slight. With an injunction, Defendants will only have to maintain the funding they have provided to Plaintiffs for years and which they have authorized year after year in the past. Further, the information in the record suggests that maintaining Plaintiffs' current level of services in their community based settings presents an overall cost savings per year to alternative placements.

■ Finally, the public interest clearly weighs in favor of an injunction in this case. First, the public interest lies with upholding the law and having the mandates of the ADA and Rehabilitation Act enforced. As Plaintiffs have shown a likelihood of success on the merits, the public interest lies with preserving the funding and prohibiting what appears to be a violation of the law. Second, as discussed above, the information presently before the court suggests that maintaining Plaintiffs in their apartments will cost less than the alternative care proposed by Defen-

dants. As the funding originates from tax dollars, the public interest clearly lies with maintaining Plaintiffs in the setting that not only fulfills the important goals of the ADA, but does so by spending less for Plaintiffs' care and treatment.

Accordingly, Plaintiffs have established all four elements showing they are entitled to the extraordinary remedy of a preliminary injunction. As held at the December 28th hearing, Plaintiffs' Motion for Preliminary Injunction [DE # 4] is GRANTED.